Opinion issued December 19, 2002



 







  


 

In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-01-00959-CV
____________
 
JOANNA AND WILLIAM STONE, Appellants
 
V.
 
JANICE BYRNE, M.D., ISABELLE WILKINS, M.D., AND BAYLOR
COLLEGE OF MEDICINE, Appellees
 
* * *
 
JANICE BYRNE, M.D., ISABELLE WILKINS, M.D., AND BAYLOR
COLLEGE OF MEDICINE, Appellants
 
V.
 
JOANNA AND WILLIAM STONE, Appellees
 
 

 
 
On Appeal from the 164th District Court
Harris County, Texas
Trial Court Cause No. 99-15945
 

 
 
O P I N I O N
          In this medical malpractice action, Joanna and William Stone argue the trial
court erred when it granted Janice Byrne, M.D., Isabelle Wilkins, M.D., and Baylor
College of Medicine’s (the Defendants) motion for summary judgment because (1)
the continuing course of treatment tolled the statute of limitations and (2) a material
fact issue existed as to Dr. Byrne. In the event the summary judgment is reversed, the
Defendants appeal the trial court’s denial of their motion to dismiss with prejudice
based on the Stones’ failure to provide an adequate expert affidavit. We affirm.
Background
          While living in Florida, Joanna Stone became pregnant with twins. In
September 1996, at 18 weeks gestation, Stone underwent an ultrasound examination. 
She was informed that the ultrasound revealed abnormalities in the female twin
consistent with osteogenesis imperfecta (OI), more commonly known as “brittle bone
disease.”
          The Stones moved to Texas, and, on October 4, 1996, Stone had her first
obstetrical appointment with Dr. Janice Byrne at Baylor College of Medicine in
Houston. After reviewing Stone’s medical records from her Florida physician and
learning of the possibility that the female twin might have OI, Byrne referred Stone
to Dr. Isabelle Wilkins, also at Baylor College of Medicine. Stone underwent
numerous ultrasounds while under Byrne’s and Wilkins’s care, and she was told OI
was an “unlikely diagnosis.”


 She was told by Dr. Byrne that there were “many
unanswered questions” about the female twin’s condition, “most of which would
probably not be answered until after the babies were born.” Wilkins’s medical
records indicate Stone “refused an amniocentesis.” Joanna Stone gave birth to twins
on January 18, 1997, and the female twin was later diagnosed with OI.
          On March 30, 1999, the Stones filed their original petition in which they
alleged the Defendants were negligent due to the following:
a.their continuous failure to properly interpret the ultrasounds
performed up to the date of delivery;
 
b.their continuous failure to properly inform the parents of the risk
of the female twin’s conditions so that the parents could make an
informed decision about continuing the pregnancy up to the date
of delivery; and
 
c.their continuous failure to recommend further testing which
would have identified a severe and irreversible abnormality up to
the date of delivery. 
The Defendants filed a motion for summary judgment on the sole ground that the
petition was untimely filed.
Limitations
          In their first point of error, the Stones argue the trial court should not have
granted the Defendants’ motion for summary judgment based upon limitations
because the Defendants were involved in a course of treatment during Joanna Stone’s
pregnancy, whereby the statute of limitations was tolled until that course of treatment
was concluded.
Standard of Review
          The standard for reviewing a summary judgment under Texas Rule of Civil
Procedure 166a(c) is whether the moving party carried its burden of showing that
there is no genuine issue of material fact and that judgment should be granted as a
matter of law. Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991). A
defendant moving for summary judgment on a statute of limitations affirmative
defense must prove conclusively that defense’s elements. Velsicol Chem. Corp. v.
Winograd, 956 S.W.2d 529, 530 (Tex. 1997). In reviewing a trial court’s summary
judgment, we resolve all doubts against the movant, and we view the evidence in the
light most favorable to the nonmovants. KPMG Peat Marwick v. Harrison County
Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999). Additionally, in determining
whether a disputed material fact issue exists, we take as true evidence favorable to the
nonmovant. Am. Tobacco Co., Inc. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997).
Limitations for Medical Negligence Claims
          Section 10.01 provides that, “notwithstanding any other law, no health care
liability claim may be commenced unless the action is filed within two years from the
occurrence of the breach or tort or from the date the medical or health care treatment
that is the subject of the claim or the hospitalization for which the claim is made is
completed.” Tex. Rev. Civ. Stat. Ann. art. 4590i, § 10.01 (Vernon Supp. 2002). 
However, the statute of limitations is only tolled where the notice letter is given
within the limitations period. Rubalcaba v. Kaestner, 981 S.W.2d 369, 373 (Tex.
App.—Houston [1st Dist.] 1998, pet. denied). Consequently, because the Stones did
not provide notice until January 14, 1999, any claim on which the limitations period
began to run before January 14, 1997 is barred. See King v. Sullivan, 961 S.W.2d
287, 292 (Tex. App.—Houston [1st Dist.] 1997, pet. denied). 
          Article 4590i section 10.01 measures the limitations period for medical
negligence claims from one of three dates: (1) the occurrence of the breach or tort,
(2) the last date of the relevant course of treatment, or (3) the last date of the relevant
hospitalization. Tex. Rev. Civ. Stat. Ann. art. 4590i, § 10.01; Husain v. Khatib,
964 S.W.2d 918, 919 (Tex. 1998). A plaintiff may not choose the most favorable date
that falls within section 10.01's three categories. Husain, 964 S.W.2d at 919. Rather,
if the date the alleged tort occurred is ascertainable, limitations must begin on that
date. Shah v. Moss, 67 S.W.3d 836, 841 (Tex. 2001). And if the date is
ascertainable, further inquiry into the second and third categories is unnecessary. 
Husain, 964 S.W.2d at 919.
          However, there may be instances when the exact date the alleged tort occurred
cannot be ascertained. The second category in section 10.01 contemplates such a
situation “wherein the patient’s injury occurs during a course of treatment for a
particular condition and the only readily ascertainable date is the last day of
treatment.” Kimball v. Brothers, 741 S.W.2d 370, 372 (Tex. 1987). But, before the
last treatment date becomes relevant to determining when limitations begins, the
plaintiff must establish a course of treatment for the alleged injury. Rowntree v.
Hunsucker, 833 S.W.2d 103, 105 (Tex. 1992). Moreover, if the defendant committed
the alleged tort on an ascertainable date, whether the plaintiff established a course of
treatment is immaterial because limitations begins to run on the ascertainable date. 
Husain, 964 S.W.2d at 919-20.
Negligent Interpretation of Ultrasounds
          The first act of negligence alleged in the Stones’ petition is the Defendants’ 
“continuous failure to properly interpret the ultrasounds performed up to the date of
delivery.”
          Dr. Byrne’s affidavit attached to her motion for summary judgment indicates
she performed ultrasounds on Joanna Stone on November 5, 1996 and December 17,
1996 and Dr. Wilkins performed ultrasounds on October 4, 1996 and January 10,
1997.


 
          When the date of the alleged tort or breach is ascertainable, limitations begins
to run from that date. Husain, 964 S.W.2d at 919. This rule applies even if the exact
date on which the injury occurred is unknown. Id. If the date the doctor’s alleged
negligence took place can be ascertained, then there are no doubts to resolve and we
must measure limitations from that date. Id. 
          Accordingly, we conclude that the last date on which Dr. Wilkins could have
failed to interpret the ultrasounds was on January 10, 1997, the day she interpreted
the ultrasound, and the last date on which Dr. Byrne could have failed to interpret the
ultrasounds was on December 17, 1996. Because the Stones filed notice on January
14, 1999, more than two years after Drs. Wilkins and Byrne allegedly failed to
accurately interpret the ultrasounds, limitations bars this claim. See Tex. Rev. Civ.
Stat. Ann. art. 4590i, § 10.01; Shah, 67 S.W.3d at 845.
Failure to Properly Inform of Risks and Recommend Testing
          The second act of negligence alleged in the Stones’ petition is the Defendants’ 
“continuous failure to properly inform the parents of the risk of the female twin’s
conditions so that the parents could make an informed decision about continuing the
pregnancy up to the date of delivery.” The third act of negligence is the Defendants’
“continuous failure to recommend further testing which would have identified a
severe and irreversible abnormality up to the date of delivery.” 
          These two theories of negligence are dependent upon and relate back to the
Stones’ claim that the Defendants “fail[ed] to properly interpret the ultrasounds.” As
such, they, too, have a readily ascertainable starting date. 
          Accordingly, we conclude that the last date on which Dr. Wilkins could have
breached her alleged “duty to inform” and “duty to recommend further testing” to the
Stones was on January 10, 1997, the last day she performed an ultrasound on Joanna
Stone. Because the Stones filed notice on January 14, 1999, more than two years
after Dr. Wilkins allegedly neglected to provide the proper information, limitations
bars this claim. See Tex. Rev. Civ. Stat. Ann. art. 4590i, § 10.01; Shah, 67 S.W.3d
at 845. 
          Additionally, we conclude that the last date on which Dr. Byrne could have
breached her alleged “duty to inform” and “duty to recommend further testing” was
on December 17, 1996, the last day she performed an ultrasound on Stone. Because
the Stones filed notice on January 14, 1999, more than two years after Dr. Byrne
allegedly neglected to provide the proper information, limitations bars this claim. See
Tex. Rev. Civ. Stat. Ann. art. 4590i, § 10.01; Shah, 67 S.W.3d at 845. 
          We overrule the Stones’ first point of error.
Fact Issue
          In their second point of error, the Stones argue the trial court should not have
granted Dr. Byrne’s motion for summary judgment because a fact issue existed as to
whether Dr. Byrne was negligent within the statutory period.
          Having already determined the Stones’ causes of action fell on a readily
ascertainable date, we overrule the Stones’ second point of error. 
Conclusion
          Because we have held the summary judgment was proper, we need not address
the defendants’ cross-point alleging that the Stones’ expert report was inadequate. 
We affirm the judgment.
 
 
                                                                        Frank C. Price
                                                                        Justice

Panel consists of Justices Taft, Alcala, and Price.




Do not publish. Tex. R. App. P. 47.