

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00217-CV

———————————————

SOREN ALDACO, Appellant

V.

BARBARA ROSE WOOD AND THREE OAKS COUNSELING GROUP, LLC,
D/B/A THRIVEWORKS, Appellees

———————————————————————————

On Appeal from the 67th District Court
Tarrant County, Texas
Trial Court No. 067-350651-24

———————————————————————————

Before Sudderth, C.J.; Birdwell and Wallach, JJ.
Memorandum Opinion by Chief Justice Sudderth

**MEMORANDUM OPINION**

Appellant Soren Aldaco underwent a "gender-affirming" surgery during a "depressed, confused" stage of her emerging adulthood, and her former counselor—Appellee Barbara Rose Wood with Appellee Three Oaks Counseling Group, LLC (together, the Wood Defendants)—wrote the recommendation letter that made the surgery possible. Although Aldaco's "depressed, confused" stage did not last, the effects of the surgery did, and Aldaco came to regret it. She sued the Wood Defendants for negligence and gross negligence, and later, she added a claim for fraud.[1] Because Aldaco filed her health care liability claims more than two years after Wood penned her letter, though, the trial court concluded that the claims were time-barred under the Texas Medical Liability Act (the Act),[2] *see* Tex. Civ. Prac. & Rem. Code Ann. § 74.251(a), and it granted the Wood Defendants' summary judgment motion on that basis. Aldaco appeals this ruling, disputing the date on which the statute of limitations began to run, the trial court's rejection of her summary judgment

---

[1]Aldaco asserted (1) negligence, gross negligence, and fraud claims against Wood; (2) the same claims against Three Oaks based on respondeat superior; and (3) independent claims against Three Oaks for negligence and gross negligence based on its failure to implement letter-preventing policies or to intervene in Wood's provision of the letter. Aldaco does not distinguish between these categories of claims on appeal; indeed, she does not mention her independent claims against Three Oaks at all. But the substance of Aldaco's arguments focuses on Wood's actions rather than those of Three Oaks.

[2]*See* Tex. Civ. Prac. & Rem. Code Ann. ch. 74 (entitled "Medical Liability"); *Uriegas v. Kenmar Residential HCS Servs., Inc.*, 675 S.W.3d 787, 788 (Tex. 2023) (referring to Chapter 74 as the "Texas Medical Liability Act").

evidence, and the inclusion of her later-pleaded fraud claim in the summary judgment order.

Aldaco's first issue largely disposes of the others. Given the undisputed date of Wood's allegedly tortious letter, Aldaco's live pleadings demonstrated that the health care underlying her claims occurred more than two years before she filed suit or provided pre-suit notice, and neither her summary judgment evidence nor her attempt to repackage her claims as fraud could change that. Therefore, we will affirm.

## I. Background

Aldaco is a biological female who, early in life, said she identified as a male. At some point, she sought counseling from Wood related to a relationship problem. The pair's interactions involved a handful of dates central to this appeal:

- On February 22, 2021, Wood wrote and provided Aldaco with a letter recommending that Aldaco undergo a "gender-affirming" double mastectomy.

- No later than May 14, 2021, Wood stopped counseling Aldaco.[3]

- On June 11, 2021, Aldaco had the "gender-affirming" surgery, having used Wood's letter to satisfy the surgery center's prerequisites.

- On May 9, 2023, Aldaco sent the Wood Defendants written, pre-suit notice of her health care liability claims.[4] *See id.* § 74.051.

---

[3]The Wood Defendants claim that the counseling ended earlier, but for purposes of this appeal, and because the issue is not dispositive, we use the date that Aldaco advanced in her live pleading and objected-to summary judgment evidence.

[4]The parties disputed whether such notice was statutorily compliant, but for purposes of summary judgment, the Wood Defendants argued that, even assuming

3

- On July 21, 2023, Aldaco filed suit against the Wood Defendants (among other health care providers) for negligence and gross negligence based on Wood's recommendation letter.

The Wood Defendants moved for summary judgment on limitations grounds, arguing that, taking Aldaco's pleadings as true, she based "all of [her] claims" on Wood's February 22, 2021 recommendation letter but filed her suit more than two years later, thus making her claims untimely under the Act's two-year statute of limitations for health care liability claims. *See id.* § 74.251(a). Aldaco countered in two ways.

First, she amended her petition to add a fraud claim premised on the same allegedly tortious recommendation letter. And second, Aldaco filed a response to the summary judgment motion, arguing that her May 9, 2023 pre-suit notice was timely because, (1) under the legal-injury rule, her claims did not accrue until the date of her surgery on June 11, 2021; and (2) alternatively, even under the Act, her claims were based on Wood's continuing course of treatment, so the statute of limitations did not begin to run until she ended her treatment on May 14, 2021. Although Aldaco's amended petition had cited the open courts provision of the Texas Constitution as a means of avoiding the Act's statute of limitations,[5] *see* Tex. Const. art. I, § 13, she did

---

Aldaco provided compliant notice on May 9, 2023, the notice was untimely and therefore could not toll the statute of limitations. We make the same assumption.

[5]Aldaco's amended petition broadly pleaded the open courts provision without specifying the claims or defendants to which it applied. However, the alleged basis for the provision's application—which the amended petition stated was Aldaco's

4

not rely on that provision in her summary judgment response.[6] She did, however, accompany her response with summary judgment evidence. And when the Wood Defendants objected to that evidence, Aldaco amended it with leave from the trial court.

Nonetheless, the trial court sustained the Wood Defendants' evidentiary objections, granted summary judgment on all of Aldaco's claims—including the later-pleaded fraud claim—and severed the claims against the Wood Defendants to make the summary judgment final.[7]

## II. Standard of Review

We review summary judgments de novo, viewing the evidence in the light most favorable to Aldaco to determine whether the Wood Defendants established their right to judgment as a matter of law. *See Erikson v. Renda*, 590 S.W.3d 557, 563 (Tex. 2019); *Shah v. Moss*, 67 S.W.3d 836, 842 (Tex. 2001). The Wood Defendants were entitled to traditional summary judgment on their statute of limitations defense if they

status as "an autistic, depressed, confused, impressionable minor" at the time of her injury—did not apply to the Wood Defendants, as it is undisputed that they did not provide services to Aldaco until she was an adult.

[6]Aldaco's summary judgment response mentioned the open courts provision only long enough to note that, although she had intended to rely on the open courts provision in asserting her claims against several other defendants, her research had since revealed that the provision did not apply "given the particular details of [her] case," so she had nonsuited those defendants.

[7]In addition to the Wood Defendants, Aldaco sued others, including the surgery center.

conclusively established the limitations start date for Aldaco's claims and that limitations had run. *Regency Field Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 818 (Tex. 2021); *Erikson*, 590 S.W.3d at 563; *see* Tex. R. Civ. P. 166a(b), (c).

The Act dictates the date of occurrence from which limitations runs for health care liability claims, and the parties do not dispute that Aldaco's negligence and gross negligence claims qualified as such. Under the Act, a health care liability claim must be "filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed." Tex. Civ. Prac. & Rem. Code Ann. § 74.251(a). But a plaintiff's provision of statutorily compliant, pre-suit notice of a claim "toll[s] the applicable statute of limitations to and including a period of 75 days," *id.* § 74.051(c), assuming limitations has not already expired when the pre-suit notice is provided.

## III. Discussion

Aldaco raises three challenges to the summary judgment, arguing that the trial court erred by (1) measuring the statute of limitations from the wrong start date; (2) sustaining the Wood Defendants' objections to her summary judgment evidence; and (3) dismissing her fraud claim.[8]

---

[8]We have renumbered and reordered Aldaco's issues for organizational purposes.

6

## A. Statute of Limitations: No Error

Her initial—and primary—appellate issue disputes the February 22, 2021 limitations start date that the trial court implicitly applied to her claims. Aldaco raises multiple arguments on this front, asserting that (1) the legal-injury rule determines the limitations start date rather than the Act, and under that rule, her claims accrued on the date of her surgery; (2) even under the Act, the statute of limitations did not begin to run until Wood's counseling ended; and (3) if, as the trial court found, limitations began to run at the time of Wood's February 22, 2021 letter, then the Act violated her constitutional rights under the open courts provision. All three arguments fail.

First, Aldaco's reliance on the legal-injury rule—the general rule that a claim accrues when a defendant's wrongful conduct causes a legal injury, *Regency Field Servs.*, 622 S.W.3d at 814–15 & n.16—ignores the controlling statute. "The enactment of statutes of limitations is, of course, the prerogative of the Legislature," *S.V. v. R.V.*, 933 S.W.2d 1, 3–4 (Tex. 1996), and in the Act, the Legislature unambiguously exercised its prerogative to excise any reference to accrual and to establish the limitations start date for health care liability claims: Such claims must be "filed within two years [(a)] from the occurrence of the breach or tort," or if that date is not ascertainable, "[(b)] from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed," Tex. Civ. Prac. & Rem. Code Ann. § 74.251(a); *see Shah*, 67 S.W.3d at 841 (interpreting predecessor statute); *Kimball v. Brothers*, 741 S.W.2d 370, 372 (Tex. 1987) (similar); *see*

7

*also Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex. 1985) (discussing Legislature's deletion of "accrual" language). It is only when "the definition of accrual is not prescribed [or supplanted] by statute and thus has been left to the courts," that we apply the default, legal-injury rule. *S.V.*, 933 S.W.2d at 3–4, *see Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 350–55 (Tex. 1990) (reciting legal-injury rule as default rule but emphasizing clear legislative intent to "unambiguously specif[y] one event—death—and only that one event as the date upon which the [wrongful death] action accrues"). Given that Aldaco otherwise acknowledges the Act's applicability to her claims, it is unclear why she believes the statute's plain language should take a backseat to the legal-injury rule. Regardless, it does not. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.002(a) (providing that, "[i]n the event of a conflict between [the Act] and another law, including a rule of procedure or evidence or court rule, [the Act] controls to the extent of the conflict"). So even if we assume, as Aldaco contends, that the Wood Defendants' tortious conduct did not cause any compensable damage until she underwent surgery, the Act nonetheless controls the limitations start date for her health care liability claims.[9]

---

[9]Aldaco also argues that, because the Wood Defendants bore the summary judgment burden of negating properly raised tolling doctrines, *see Draughon v. Johnson*, 631 S.W.3d 81, 89–91 (Tex. 2021), they were required to negate the legal-injury rule. But the legal-injury rule is not a tolling doctrine, and regardless, because the Wood Defendants conclusively established that the Act applied, they conclusively displaced the default legal-injury rule.

Aldaco's second argument—that, under the Act, limitations did not begin to run until "the date the medical or health care treatment . . . [wa]s completed," *id.* § 74.251(a)—is similarly misguided. For decades, Texas courts applying the Act's limitations provision have recognized that a plaintiff "may not choose the most favorable [start] date that falls within [the Act's] . . . categories." *Shah*, 67 S.W.3d at 841; *see Husain v. Khatib*, 964 S.W.2d 918, 919 (Tex. 1998) (similar). "Rather, if the date the alleged tort occurred is ascertainable, limitations must begin on that date." *Shah*, 67 S.W.3d at 841. Here, the date of the alleged tort is easily ascertainable: it is undisputed that Wood penned and provided the allegedly tortious recommendation letter on February 22, 2021. While Aldaco attempts to characterize her claims as being rooted in Wood's course of treatment—emphasizing that Wood had an ongoing obligation to withdraw the recommendation letter and that her counseling was flawed overall—the core of Aldaco's allegations traces back to a single ascertainable event: Wood's preparation and provision of the February 22, 2021 recommendation letter. *See Husain*, 964 S.W.2d at 919–20 (holding that ascertainable date of medical negligence determined limitations start date under predecessor statute and disregarding plaintiff's attempt to characterize the tort as "an improper course of treatment based on a misdiagnosis of fibrocystic disease" rather than "a failure to diagnose cancer" on specific dates); *Bala v. Maxwell*, 909 S.W.2d 889, 892–93 (Tex. 1995) (applying predecessor to Act; reiterating prior holdings that "when a physician fails to diagnose a condition, the continuing nature of the diagnosis does not extend

9

the tort for limitations purposes"; and going on to hold that, under the Act, the limitations period for a wrongful death claim based on medical malpractice begins to run at the time of the tort even though the death does not occur until later). And it is undisputed that Aldaco did not file or provide pre-suit notice of her claims within two years of that letter.

This brings us to Aldaco's third limitations argument: her contention that, if her claims are time-barred under the Act, then the Act violates her rights under the open courts provision of the Texas Constitution. Aldaco did not raise this argument in her written response to the Wood Defendants' summary judgment motion, though, so we cannot consider it on appeal as a basis for reversal.[10] *See* Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer[,] or other response shall not be considered on appeal as grounds for reversal."); *accord FieldTurf USA, Inc. v. Pleasant Grove Indep. Sch. Dist.*, 642 S.W.3d 829, 838 (Tex. 2022); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993); *Clear Creek Basin Auth.*, 589 S.W.2d at 677; *see also Shah*, 67 S.W.3d at 846–47 (reviewing summary judgment based on Act's statute of limitations and recognizing that plaintiff whose

_____

[10]Aldaco pleaded the open courts provision in her amended petition and mentioned it in her oral argument at the summary judgment hearing, but these references were insufficient to preserve the ground as a basis for reversal. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex. 1979) (clarifying that a nonmovant's grounds for avoiding summary judgment must be presented in writing; that "[t]he term 'answer' in the context of the [R]ule refers to an answer to the motion, not an answer generally filed in response to a petition"; and that oral argument may not expand issues).

claims were time-barred bore the burden to raise a fact issue on open courts provision's application).

Therefore, under the plain language of the Act and the decades of precedent interpreting it, the statute of limitations for Aldaco's claims against the Wood Defendants began to run on February 22, 2021, and those claims are time-barred. We overrule Aldaco's first issue.

## B. Summary Judgment Evidence: No Harm

Aldaco next argues that the trial court erred by sustaining the Wood Defendants' objections to her summary judgment evidence. But we need not address this issue because even if the trial court erred, the error was of no moment.

The parties did not and do not dispute the key dates central to the statute of limitations issue; they dispute the legal effect of those dates. Nothing in Aldaco's summary judgment evidence contradicted the uncontested date of Wood's letter, the date of Aldaco's pre-suit notice of her claims,[11] or the date of Aldaco's filing of her original petition. Any error in the trial court's ruling on the summary judgment evidence was therefore harmless; with or without the evidence, Aldaco's claims were conclusively shown to be time-barred. We overrule her second issue.

---

[11]Aldaco argues that her summary judgment evidence showed the date of her pre-suit notice, but the Wood Defendants' motion sought summary judgment despite Aldaco's alleged pre-suit notice, and we have already assumed that such notice was given as Aldaco claimed. *See supra* note 4.

## C.    Scope of Judgment:  No Harm

Aldaco's third and final appellate issue is also harmless.  She complains of the scope of the judgment, arguing that because her later-pleaded fraud claim was not challenged in the Wood Defendants' motion for summary judgment, the trial court erred by granting judgment on that claim.[12]

While Aldaco is correct that "a trial court errs in granting a summary judgment on a cause of action not expressly presented by written motion, . . . the error is harmless when the omitted cause of action is precluded as a matter of law by other grounds raised in the case."  *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297–98 (Tex. 2011); *see Endeavor Energy Res., L.P. v. Cuevas*, 593 S.W.3d 307, 312 (Tex. 2019) (similar).  So when, as here, a defendant seeking summary judgment fails to amend its motion after the plaintiff amends her petition to add another claim, we may still affirm the judgment if "a ground asserted in the motion . . . conclusively negates a common element of the newly and previously pleaded claims, or . . . the original motion is broad enough to encompass the newly asserted claims."  *RayMax Mgmt., L.P. v. Am. Tower Corp.*, No. 02-15-00298-CV, 2016 WL 4248041, at *7 (Tex. App.— Fort Worth Aug. 11, 2016, pet. denied) (mem. op.).

---

[12]Aldaco further argues that, because the trial court reversibly erred by granting judgment on her fraud claim, it also erred by severing her claims against the Wood Defendants.  Because the trial court's judgment on Aldaco's fraud claim was harmless, though, we need not address her contingent challenge to the severance.  *See* Tex. R. App. P. 47.1.

The Wood Defendants' summary judgment motion relied on two characteristics that were shared among Aldaco's claims—the claims' factual basis and statute of limitations—to establish a legal bar that was common to all of them. Aldaco's fraud claim essentially reiterated the factual allegations in her previously pleaded negligence and gross negligence claims, with all three premised on Wood's "authoring and signing [of] a deceptive letter containing numerous material falsehoods" that the surgery center "rel[ied] upon . . . to perform [Aldaco's] double mastectomy."[13] And for much the same reason, the fraud cause of action—like the negligence and gross negligence causes of action—qualified as a health care liability claim subject to the Act's two-year limitations period.[14] *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13) (defining a "[h]ealth care liability claim" based on claim's factual basis, i.e., whether claim is against a health care provider for "treatment, lack of treatment, or other claimed departure"); *Diversicare Gen. Partner, Inc. v. Rubio*, 185

---

[13]Specifically, Aldaco's negligence and gross negligence claims were based on the Wood Defendants' "authoring and signing a deceptive letter containing numerous material falsehoods to enable a continuation of [Aldaco's] 'gender-affirming' treatments and allowing that falsified letter to serve as a prerequisite for the double mastectomy." And her amended petition explained her fraud claim by pointing to "[t]he falsified letter that Wood authored and executed," which according to Aldaco, "contained material, false representations made by Wood . . . to the [surgery center] with the expectation . . . that the [surgery center] would rely upon that letter to perform [Aldaco's] double mastectomy."

[14]Aldaco argues that a different statute of limitations applies to her fraud cause of action, implicitly assuming that it does not qualify as a health care liability claim without analyzing or addressing the issue.

S.W.3d 842, 847–53 (Tex. 2005) (holding that claims for negligence, breach of contract, premises liability, and fraudulent inducement—all stemming from sexual assault at a health care facility—were subject to the Act's two-year limitations provision and explaining that we "examine the underlying nature of the claim and are not bound by the form of the pleading" in determining whether a claim is a health care liability claim). So when the Wood Defendants relied on these two characteristics to move for summary judgment on "all of [Aldaco's] claims against them"—which, at the time, were only negligence and gross negligence—the motion was nonetheless broad enough to extend to Aldaco's later-pleaded fraud claim, and it established that all three claims were time-barred.

Therefore, although the trial court erred by dismissing Aldaco's later-pleaded fraud claim as part of its summary judgment order, the error was harmless. We overrule Aldaco's third issue.

## IV.  Conclusion

Because the Wood Defendants conclusively established that all of Aldaco's claims against them were time-barred, and because the other challenged trial court rulings were harmless, we affirm the trial court's judgment.  *See* Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered:  November 21, 2024